

FILED

Sep 15 2020, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

**ATTORNEY FOR APPELLANT**

Peter A. Kenny
Indianapolis, Indiana

**ATTORNEY FOR APPELLEE**

Brian A. Karle
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Adoption of: N.I.D. (Minor Child),

and

C.C. (Mother)

*Appellant-Respondent,*

v.

R.P. and K.P.,

*Appellees-Petitioners.*

September 15, 2020

Court of Appeals Case No.
20A-AD-187

Appeal from the Clinton Circuit Court

The Honorable Bradley K. Mohler, Judge

Trial Court Cause No.
12C01-1702-AD-1

**Tavitas, Judge.**

## Case Summary

[1] C.C. appeals the trial court's denial of her motion to set aside the adoption of her child, N.D. (the "Child"), by R.P. and K.P. We affirm.

## Issue

C.C. raises two issues, which we consolidate and restate as whether the trial court properly denied C.C.'s motion to set aside the adoption decree pursuant to Indiana Trial Rule 60(B). On cross-appeal, R.P. and K.P. argue that the trial court erred by denying their motion to dismiss because C.C.'s motion to set aside the adoption was untimely.

## Facts

The Child was born to C.C. in April 2008. C.C. and the Child lived in California, but in 2016, C.C. decided to place the Child for adoption. In December 2016, C.C. contacted an adoption agency in Texas, and the agency identified R.P. and K.P. as prospective adoptive parents. C.C. requested that the agency put her in direct contact with R.P. and K.P., and C.C. emailed R.P. and K.P. on January 28, 2017. The parties discussed the adoption and decided to complete a private adoption. R.P. and K.P. offered to obtain an attorney for C.C., but she declined the offer.

On February 6, 2017, C.C. and the Child traveled to Indiana to meet R.P. and K.P. On February 8, 2017, C.C. signed a Limited Durable Power of Attorney that gave R.P. and K.P. the ability "[t]o make personal decisions for [C.C.] and on [C.C.'s] behalf regarding [the Child's] custody, care, support, education, welfare, religious upbringing, medical care and health care as [R.P. and K.P.], in their sole discretion, may determine." Ex. Vol. III p. 39.

The same day, C.C. also signed a written consent to adoption and waiver of notice of hearing ("consent"). The consent provided:

> Comes now [C.C.], the natural mother of [the Child], and hereby notifies the Court that she has received notice of the Verified Petition for Adoption of [the Child], filed by [R.P. and K.P.], adoptive parents in the above matter. [C.C.] believes such adoption is in the best interest of her child.
>
> [C.C.] hereby affirms to the Court that she does not know who the biological father of [the Child] is, paternity was never established for [the Child], no court proceedings were ever begun to establish paternity, [she] does not know an address for the biological father, and that the biological father has had no contact with [the Child] since her birth eight years ago and has never paid support.
>
> [C.C.] hereby consents to the adoption of her minor child . . . by [R.P. and K.P.] as requested in the Petition for Adoption and waives any and all further notices of hearing on said Petition.

Appellant's App. Vol. II p. 21. On February 10, 2017, R.P. and K.P. filed a verified petition for adoption along with C.C.'s consent. C.C. then returned to California.

At some point, C.C., R.P., and K.P. also signed a "Visitation and Media Understanding." Ex. Vol. III p. 3. The purpose of the agreement was to set "parameters surrounding [C.C.'s] visitation of [the Child] and Adoptive parents['] obligation to send photos/videos of Child to [C.C.]." *Id.* The agreement provided: "Birth mother understands this understanding is wholly voluntary and is not legally admissible in court." *Id.* R.P. and K.P. agreed to

"make all reasonable allowances for visitation" up to three times a year for twenty-four hours with one-month advance notification. R.P. and K.P. also agreed to send photos and allow live video or audio chat sessions. On April 19, 2017, the trial court held a hearing on the petition and issued an order granting the adoption. Although C.C. was in Indiana at the time, she did not attend the hearing.

[7] In October 2017, issues arose regarding post-adoption contact, and R.P. and K.P. ended communication between C.C. and the Child. On April 2, 2018, C.C. filed a "Verified Motion to Set Aside Adoption." Appellant's App. Vol. II p. 24. C.C. alleged the adoption should be set aside pursuant to Indiana Trial Rule 60(B) due to "[m]istake; fraud; and in the interests of justice." *Id.* at 26. C.C. argued: (1) she "did not have or was not provided informed consent with respect to granting of the adoption herein and the termination of her parental rights"; (2) the Interstate Compact on the Placement of Children ("ICPC") applied because C.C. was not a resident of Indiana and did not reside in Indiana for six months; (3) C.C. "did not knowingly consent to the voluntary termination of her parental rights"; (4) "adoptive parents informed [C.C.] that the statutory requirements could be subverted or manipulated"; (5) R.P. and K.P. made promises to C.C. regarding post-adoption contact; and (6) R.P. and K.P. were not relatives of C.C. and were not appointed by a court as legal guardians. *Id.* at 25.

[8] In response to C.C.'s motion to set aside the adoption, R.P. and K.P. filed a "Motion to Dismiss[,] Motion to Strike[,] Response to Natural Mother's

Verified Motion to Set Aside Adoption." Appellee's App. Vol. II p. 11. R.P. and K.P. argued: (1) C.C. failed to file her motion to set aside within the statutory deadlines of Indiana Code Section 31-19-14-2 and Indiana Code Section 31-19-14-4; (2) the ICPC did not apply to the adoption; (3) the Visitation and Media Understanding should be stricken from the record because the parties agreed it was inadmissible; (4) the parties did not enter into a statutory post-adoption contact agreement; and (5) setting aside the adoption was not in the Child's best interest.

[9] The trial court held hearings on the matter on July 23, 2018, and October 31, 2018. On December 16, 2019,[1] the trial court denied R.P.'s and K.P.'s "motion to dismiss" as follows:

> Motion to Dismiss [C.C.'s] Motion to Set Aside for being untimely filed is DENIED. Indiana Code Section 31-19-14-2 allows an adoption decree to be challenged not more than the later of six months after the decree was entered or one year after the adoptive parents receive custody of the child. The Order of Adoption was signed on April 19, 2017. [C.C.'s] motion to set aside was filed on April 2, 2018, which is approximately 11 ½ months later and which is slightly within the time allotted.

---

[1] We are concerned with the more than one-year delay between the hearings on this matter and the issuance of the order. In *In re Adoption of C.B.M.*, 992 N.E.2d 687, 691 (Ind. 2013), our Supreme Court noted that it was "gravely troubled" by a three-year delay at the trial court level in resolving a parent's petition to set aside an adoption. The Court noted that "[t]ime is of the essence in matters involving children" and expressed a "firm expectation that parties and courts" would give priority consideration to such cases "even without being expressly compelled to do so by a comparable Trial Rule." *C.B.M.*, 992 N.E.2d at 692.

* * * * *

The Court recognizes that [C.C.] placed [the Child] with [R.P. and K.P.] on or about February 8, 2017. Whether such placement qualifies as "custody of the child" could be argued. However, without deciding such issue, the Court believes it is more appropriate to address the parties' issues on the merits.

Appellant's App. Vol. II p. 14, 14 n.3.

[10] The trial court also denied C.C.'s motion to set aside. The trial court found that: C.C.'s motion to set aside was timely; C.C.'s consent to the adoption was voluntary; the ICPC did not apply to the adoption; C.C. "failed to prove that any non-compliance with the Visitation Understanding justifie[d] her request to set aside the adoption"; "the adoption was in the best interests of [the Child] and affirming the adoption remains in [the Child's] best interests"; and C.C. failed to prove mistake, surprise, fraud, or any other reason for setting aside the adoption. *Id.* at 17, 19. C.C. now appeals.

## Analysis

[11] C.C. challenges the trial court's denial of her motion to set aside the adoption decree pursuant to Indiana Trial Rule 60(B). Relief from judgment under Trial Rule 60 is an equitable remedy within the trial court's discretion. *In re Adoption of C.B.M.*, 992 N.E.2d 687, 691 (Ind. 2013). Accordingly, we review a trial court's Rule 60 ruling only for abuse of discretion. *Id.* Upon a motion for relief from judgment, the burden is on the movant to show sufficient grounds for

relief under Indiana Trial Rule 60(B). *In re Paternity of Baby Doe*, 734 N.E.2d 281, 284 (Ind. Ct. App. 2000).

[12] R.P. and K.P. challenge the denial of their motion to dismiss. "The standard of review on appeal of a trial court's grant of a motion to dismiss for the failure to state a claim is de novo." *Mathews v. Hansen*, 797 N.E.2d 1168, 1171 (Ind. Ct. App. 2003), *trans. denied*. "[W]e do not defer to the trial court's decision because deciding a motion to dismiss based upon a failure to state a claim involves a pure question of law." *Id.* "The grant or denial of a motion to dismiss turns only on the legal sufficiency of the claim and does not require determinations of fact." *Id.*

[13] The trial court here entered findings of fact and conclusions thereon sua sponte. In such a case, we apply a two-tiered standard of review, determining: (1) whether the evidence supports the findings of fact; and (2) whether the findings support the judgment. *Matter of Adoption of E.M.L.*, 103 N.E.3d 1110, 1115 (Ind. Ct. App. 2018), *trans. denied*. When findings are entered sua sponte, they control only as to the issues upon which the court has found, but they do not otherwise affect our general judgment standard of review. *Id.* We may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court. *Id.* We do not reweigh evidence or reassess witness credibility, and we consider only the evidence favorable to the trial court's order. *C.S. v. T.K.*, 118 N.E.3d 78, 81 (Ind. Ct. App. 2019).

[14] We will set aside the trial court's findings or judgment only if they are clearly erroneous. *E.M.L.*, 103 N.E.3d at 1115. "A finding of fact is clearly erroneous if the record lacks evidence or reasonable inferences from the evidence to support it." *Id.* "We do not defer to conclusions of law, however, and evaluate them de novo." *C.S.*, 118 N.E.3d at 81. We also note that, "[w]hen reviewing a trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion." *Matter of Adoption of C.A.H.*, 136 N.E.3d 1126, 1128 (Ind. 2020).

### Indiana Code Chapter 31-19-14

[15] We first address R.P. and K.P.'s argument that the trial court erred by denying their motion to dismiss C.C.'s motion to set aside the adoption. R.P. and K.P.'s argument is based on Indiana Code Section 31-19-14-2, which they argue precludes the challenge to the adoption decree due to the untimeliness of C.C.'s motion.

[16] Indiana Code Chapter 31-19-14 provides the time limitations on direct or collateral attacks of adoption decrees. These statutes "operate as statutes of limitation[;] they are favored because they provide security against stale claims and promote the welfare and peace of society." *J.F. v. L.K.*, 136 N.E.3d 624, 628 (Ind. Ct. App. 2019). "When the undisputed facts establish that a claim is filed after the running of the applicable statute of limitations, the court must enter judgment accordingly." *Id.* "Further, if the applicable statute of limitations has run, dismissal is appropriate."

[17]   The right to challenge an adoption decree is granted in Indiana Code Section 31-19-14-2, which provides:

> *Except as provided in section 3 of this chapter*, if a person whose parental rights are terminated by the entry of an adoption decree challenges the adoption decree not more than the later of:
>
> (1) six (6) months after the entry of an adoption decree; or
>
> (2) one (1) year after the adoptive parents obtain custody of the child;
>
> the court shall sustain the adoption decree unless the person challenging the adoption decree establishes, by clear and convincing evidence, that modifying or setting aside the adoption decree is in the child's best interests.

(emphasis added).  The statute does not define "custody."

[18]   Even if C.C. was permitted to challenge the adoption decree, Indiana Code Section 31-19-14-2 required C.C. to "establish[], by clear and convincing evidence, that modifying or setting aside the adoption decree [was] in the child's best interests."  The trial court found that "the adoption was in the best interests of [the Child] and affirming the adoption remain[ed] in [the Child's] best interests."  Appellant's App. Vol. II p. 19.  On appeal, C.C. makes no argument regarding the Child's best interests and has failed to demonstrate that the trial court's findings and conclusions thereon are clearly erroneous.

[19] Furthermore, Indiana Code Section 31-19-14-4 limits a person's ability to challenge an adoption decree outside the time limits provided in Indiana Code Section 31-19-14-2. The statute provides:

> After the expiration of the period described in section 2 of this chapter, neither a person whose parental rights are terminated by the entry of an adoption decree nor any other person may challenge the adoption decree even if:
>
> (1) notice of the adoption was not given; or
>
> (2) the adoption proceedings were in any other manner defective.

Ind. Code § 31-19-14-4.

[20] Under these statutory provisions, C.C. was barred from challenging the adoption "one (1) year after the adoptive parents obtain[ed] custody of the child." I.C. § 31-19-14-2. On appeal, R.P. and K.P. argue that they received custody of the Child in February 2017 and that, accordingly, C.C.'s April 2, 2018 challenge to the adoption decree was filed outside of the one-year deadline set out in Indiana Code Section 31-19-14-2. C.C. argues that R.P. and K.P. did not obtain custody of the Child until the adoption was granted on April 19, 2017.

[21] Indiana Code Section 31-19-14-2, however, explicitly provides that the statute applies "[e]xcept as provided in section 3 of this chapter." (emphasis added). The parties do not analyze Indiana Code Section 31-19-14-3, which is applicable here and provides:

(a) *A person who consents to an adoption may not withdraw the consent to adoption after the entry of the adoption decree under IC 31-19-10-4.*

(b) A person who is served with notice of an adoption under IC 31-19-4 may not:

> (1) contest the adoption; or

> (2) establish paternity;

more than thirty (30) days after the date of service of notice of the adoption.

(c) A person who receives actual notice of an adoption under IC 31-19-3 may not:

> (1) contest the adoption; or

> (2) establish paternity;

more than thirty (30) days after the date of receiving actual notice of the adoption.

(d) *A person who is prohibited from taking action by subsection (a), (b), or (c) may not challenge an adoption decree.*

(emphasis added).

[22]   C.C. consented to the adoption. The adoption statutes contain provisions for the withdrawal of a parent's consent to adoption prior to the entry of the

adoption decree.[2]  *See* I.C. § 31-19-10-4.  C.C., however, did not seek to withdraw her consent prior to the entry of the adoption decree.  Accordingly, Indiana Code Section 31-19-14-3(d) explicitly prohibited C.C. from challenging the adoption decree.

[23]  Procedurally, this Court has addressed similar failures to comply with the time limitations of Indiana Code Chapter 31-19-14 in different ways.  In *J.F.*, 136 N.E.3d at 629, the biological parent filed a motion to set aside an adoption pursuant to Trial Rule 60(B), and we affirmed the trial court's denial of the motion.  In *Mathews*, 797 N.E.2d at 1172-73, the biological parent filed a motion to set aside an adoption pursuant to Trial Rule 60(B); the adoptive parents filed a motion to dismiss; and we affirmed the trial court's grant of the

---

[2] A consent to adoption may be withdrawn only as provided in Indiana Code Chapter 31-19-10 and "may not be withdrawn after the entry of the adoption decree."  I.C. § 31-19-10-4.  Indiana Code Section 31-19-10-1(c) provides: "A person seeking to withdraw consent to an adoption must file a motion to withdraw consent to the adoption with the court."  Under Indiana Code Section 31-19-10-3(b),

A consent to adoption may not be withdrawn after:

(1) thirty (30) days after the consent to adoption is signed;

(2) the person who signs the consent to adoption appears, in person or by telephonic communications or video conferencing, before a court in which the petition for adoption has been or will be filed and acknowledges that the person:

(A) understood the consequences of the signing of the consent to adoption;

(B) freely and voluntarily signed the consent to adoption; and

(C) believes that adoption is in the best interests of the person to be adopted; or

(3) the person who signs the consent to adoption appears, in person or by telephonic communications or video conferencing, before a court of competent jurisdiction if the parent is outside of Indiana and acknowledges that the person:

(A) understood the consequences of the signing of the consent to adoption;

(B) freely and voluntarily signed the consent to adoption; and

(C) believes that adoption is in the best interests of the person to be adopted;

whichever occurs first.

motion to dismiss. Here, C.C. filed a motion to set aside the adoption pursuant to Trial Rule 60(B), R.P. and K.P. filed a motion to dismiss, and the trial court denied both the motion to dismiss and the motion to set aside.

[24] Because C.C.'s motion to set aside the adoption did not comply with the time limitations of Indiana Code Chapter 31-19-14, the trial court should have granted R.P. and K.P.'s motion to dismiss. *See, e.g., J.F.*, 136 N.E.3d at 629 (affirming the denial of a parent's motion for relief from judgment regarding an adoption decree where the motion for relief from judgment was not timely filed under Indiana Code Chapter 31-19-14); *see also Mathews*, 797 N.E.2d at 1172-73 ("To fall within the purview of the statute for challenging the adoption decree, Mathews was required to file the motion to vacate within six months after the adoption decree had been entered, or one year after the adoptive parents had obtained custody of K.H. Because Mathews failed to register in a timely fashion, he may not now challenge the adoption decree."). Regardless, the trial court properly denied C.C.'s motion to set aside.

[25] Our Supreme Court has noted that "courts should interpret statutes based on their enacted text and not the justness of the outcome. If the legislature writes a statute imposing an onerous outcome, it is not our job to soften the blow." *Garner v. Kempf*, 93 N.E.3d 1091, 1098 (Ind. 2018). "To hold otherwise and permit [C.C.] to vacate the adoption decree in these circumstances would contravene the intended purpose and specific language of the applicable statute of limitations." *Mathews*, 797 N.E.2d at 1173. As a result, we conclude that the trial court properly denied C.C.'s motion to set aside the adoption decree.

## Trial Rule 60(B)

[26] We have allowed, in certain limited circumstances, a biological parent to challenge an adoption despite the biological parent's failure to comply with the time limitations of Indiana Code Chapter 31-19-14. *See In re Adoption of D.C.*, 887 N.E.2d 950, 958-59 (Ind. Ct. App. 2008) (allowing relief from judgment where the adoption court did not have personal jurisdiction and, thus, the judgment was void and holding that time limitations of Indiana Code Section 31-19-14-4 were unconstitutional as applied to the biological mother because the biological mother's due process rights were violated). C.C. makes no argument here that her constitutional rights were violated. Moreover, even if we address C.C.'s motion to set aside under Trial Rule 60(B), C.C.'s arguments fail.

[27] In C.C.'s motion to set aside the adoption, she argued that the adoption should be set aside pursuant to Trial Rule 60(B) for "[m]istake; fraud; and in the interests of justice." Appellant's App. Vol. II p. 26. On appeal, however, C.C. does not specifically identify the applicable portions of Trial Rule 60(B). We note that Trial Rule 60(B) provides:

> On motion and upon such terms as are just the court may relieve a party or his legal representative from a judgment, including a judgment by default, for the following reasons:
>
> (1) mistake, surprise, or excusable neglect;
>
> * * * * *

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

\* \* \* \* \*

(8) any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4).

The motion shall be filed within a reasonable time for reasons (5), (6), (7), and (8), and not more than one year after the judgment, order or proceeding was entered or taken for reasons (1), (2), (3), and (4). A movant filing a motion for reasons (1), (2), (3), (4), and (8) must allege a meritorious claim or defense.

C.C. makes no attempt to demonstrate how her arguments fit within the framework of Trial Rule 60(B)(1), (3), or (8). C.C.'s argument under Trial Rule 60(B) required C.C. to establish a meritorious claim or defense, but C.C. asserts no argument on appeal regarding her meritorious defense. Rather, on appeal, C.C. only argues that the trial court should have set aside the adoption decree because C.C.'s consent was involuntary and because the provisions of the ICPC were not followed during the adoption process.

### Consent and Post-Adoption Contact Agreement

C.C. argues that her consent to the adoption was involuntary because she relied on R.P.'s and K.P.'s promises of continued regular contact with the Child in making the decision to sign the consent. According to C.C., R.P. and K.P. cut off communication and the promises of an open adoption were "no more than a

ruse to secure C.C.'s consent." Appellant's Br. p. 8. We note that the "Visitation and Media Understanding" signed by C.C. and R.P. and K.P. provided: "Birth mother understands this understanding is *wholly voluntary* and is *not legally admissible* in court." Ex. Vol. III p. 3 (emphasis added).

[30] The General Assembly has enacted statutes to address post-adoption contact privileges. *See* Ind. Code Chap. 31-19-16. The statutes allow for post-adoption contact agreements. These post-adoption contact agreements may be voided or modified if the trial court finds it would be in the child's best interests to void or modify the agreement.[3] *See* I.C. § 31-19-16-6.

[31] The parties' agreement, however, did not comply with the Indiana post-adoption contact statutes for several reasons, including the fact that the agreement was not filed with or approved by the trial court during the adoption proceedings and the agreement did not contain the required statutory language. *See* I.C. § 31-19-16-2 (noting that a court "may grant postadoption contact privileges" if certain requirements are met, including filing the agreement with

---

[3] Indiana Code Section 31-19-16-6 provides:

> (a) The court may void or modify a postadoption contact agreement approved under this chapter at any time before or after the adoption if the court determines after a hearing that the best interest of the child requires the voiding or modifying of the agreement.
>
> (b) Before the court:
>
>   (1) voids or modifies an agreement; or
>
>   (2) hears a motion to compel compliance with an agreement approved under this chapter;
>
> the court may appoint a guardian ad litem or court appointed special advocate under IC 31-32-3 to represent and protect the best interests of the child.

the trial court and the approval of the trial court); I.C. § 31-19-16-3 (requiring the agreement to contain "[a]n acknowledgment by the birth parents that the adoption is irrevocable, even if the adoptive parents do not abide by the postadoption contact agreement"). Our Supreme Court has held, "unless all of the provisions of Indiana's open adoption statutes (I.C. §§ 31-19-16-1 & 2) are satisfied, the voluntary termination of parental rights may not be conditioned upon post-adoption contact privileges." *In re M.B.*, 921 N.E.2d 494, 500 (Ind. 2009). Because the post-adoption contact agreement here did not comply with the statutes, a judicial determination of the best interests of the Child was not necessary to terminate contact.

[32] Even if the parties had entered into a valid agreement, a failure to comply with such an agreement is not a basis for revoking an adoption decree. Indiana Code Section 31-19-16-8 provides: "A court may not revoke an adoption decree because a birth parent or an adoptive parent fails to comply with a postadoption contact agreement approved by a court under [Indiana Code Chapter 31-19-16]."). *See also M.B.*, 921 N.E.2d at 502 ("We hold that her parental rights remain terminated and that she is entitled to no relief in that regard. She consented to the termination in a proceeding that appears to us to have accorded with all relevant law, save the visitation proviso. While she retains an enforceable right as to the visitation proviso, this does not create any basis for reopening the termination of parental rights proceeding.").

[33] The breakdown of communication between C.C. and R.P. and K.P., although unfortunate, does not invalidate C.C.'s consent or provide a basis to revoke the

adoption decree. The trial court found that C.C.'s consent was voluntary, and we agree. C.C.'s consent argument does not establish that C.C. is entitled to relief from the judgment under Trial Rule 60(B).

## *ICPC*

[34] C.C. also argues that the trial court should have granted her motion to set aside the adoption because R.P. and K.P. failed to comply with the ICPC during the adoption process. The trial court found that C.C. failed to prove the ICPC applied, and we agree. The ICPC does not apply to "[t]he sending or bringing of a child into a receiving state by the child's parent, stepparent, grandparent, adult brother or sister, adult uncle or aunt, or guardian and leaving the child with any such relative or *nonagency guardian* in the receiving state." I.C. § 31-28-4-1, Article VIII(a). C.C. argues that R.P. and K.P. did not qualify as nonagency guardians.

[35] C.C. decided to enter into a private adoption with R.P. and K.P., left the Child with R.P. and K.P., and signed a Limited Durable Power of Attorney that gave R.P. and K.P. the ability "[t]o make personal decisions for [C.C.] and on [C.C.'s] behalf regarding [the Child's] custody, care, support, education, welfare, religious upbringing, medical care and health care as [R.P. and K.P.], in their sole discretion, may determine." Ex. Vol. III p. 39. The Limited Durable Power of Attorney gave R.P. and K.P. substantially the same duties

and responsibilities as a guardian.[4]  Under these circumstances, we agree that R.P. and K.P. were acting as nonagency guardians, and accordingly, the ICPC did not apply.  *See In re Adoption of M.L.L.*, 810 N.E.2d 1088, 1093 (Ind. Ct. App. 2004) (holding that the ICPC did not apply where "Lowe sent M.L.L. to Indiana to live with the Whites, whom Lowe designated as guardians").  C.C.'s ICPC argument does not establish that C.C. is entitled to relief from the judgment under Trial Rule 60(B).

# Conclusion

[36]  Although the trial court erred by denying R.P. and K.P.'s motion to dismiss, the trial court properly denied C.C.'s motion to set aside the adoption decree. Accordingly, we affirm.

Affirmed.

Kirsch, J., and Pyle, J., concur.

---

[4] *See* Indiana Code Chapter 29-3-8 for a guardian's duties.